Filed 7/27/26  P. v. Tapia CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

ARTHUR CHRISTOPHER TAPIA,

    Defendant and Appellant.

E085425

(Super.Ct.No. RIF2403307)

OPINION

APPEAL from the Superior Court of Riverside County.  Raul A. Sahagun, Judge. (Retired judge of the L.A. Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Arthur Christopher Tapia of several offenses relating to a domestic violence incident involving his girlfriend.  On appeal, Tapia argues that the trial court prejudicially erred by imposing an upper-term sentence on the basis of facts not admitted or proven beyond a reasonable doubt.  We affirm.

BACKGROUND

I.    *The charges*

The information alleged that Tapia committed several offenses against his girlfriend, Jane Doe, on February 11, 2024.  The charged offenses include one count each of torture (Pen. Code, § 206, count 1; unlabeled statutory references are to this code), inflicting corporal injury on an intimate partner, with a qualifying prior conviction (§ 273.5, subds. (a), (f)(1) (section 273.5(a) & section 273.5(f)(1)), count 2), false imprisonment (§ 236, count 3), and violating a court order (§ 166, subd. (c)(1), count 4).  With respect to count 2, the People alleged that Tapia personally inflicted great bodily injury on Doe.  (§ 12022.7, subd. (e).)

The People also alleged the following four aggravating factors:  (1) The offense involved great violence, great bodily harm, or threat of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1); unlabeled rule references are to these rules); (2) Tapia was on probation when the crimes were committed (rule 4.421(b)(4)); (3) his prior convictions were numerous and of increasing seriousness (rule 4.421(b)(2)); and (4) his prior performance on probation was unsatisfactory (rule 4.421(b)(5)).

II.    *The trial*

Doe's mother testified about the incident that occurred on February 11, 2024, which was a Sunday.**1**  At that time, Tapia and Doe had a two-year-old daughter and were living together.  Doe's mother was visiting the couple's home on February 11.

Tapia and Doe got into an argument that day about a former romantic partner of Doe's.  Tapia yelled at Doe, and Doe "grabbed some bags to pack her stuff but [Tapia] yanked it away."  Doe then ran toward a basket of children's toys, which Tapia "emptied."  Doe's mother described Tapia as "very upset," and she believed that Tapia was "about to attack" Doe.  Doe's mother placed her body between Tapia and Doe.  Doe's mother eventually called the police and told Tapia that she had done so.  Tapia "became upset," "appeared afraid," and left before law enforcement arrived.

Two days later, Doe called 911.  A recording of the call was played for the jury.  Doe was at home with her daughter, and Tapia was inside the garage.  Doe was "really scared" and could not leave the house.  She told the dispatcher that Tapia hit her on Sunday and that there were outstanding warrants for his arrest.  Law enforcement arrived, detained Tapia, and took him into custody.

A sheriff's deputy spoke with Doe, who was crying and appeared "visibly upset."  Doe had visible injuries on her face, neck, and ear, which the deputy photographed.  The

---

**1**     The prosecution called Doe as a witness at trial, but she invoked her Fifth Amendment rights and refused to answer any questions, including whether she was married to Tapia and whether he was present in the courtroom.

deputy asked Doe what happened to her neck, and she said that Tapia "tried to pick me up by my head" on Sunday.

III.    *The verdict*

The jury found Tapia guilty of infliction of corporal injury (§ 273.5(f)(1), count 2), false imprisonment (§ 236, count 3), and violating a court order (§ 166, subd. (c)(1), count 4) and found true the great bodily injury allegation. During trial, the court granted a defense motion to dismiss count 1.

Tapia admitted and the court found true that he suffered a prior conviction in 2023 for violating section 273.5(f)(1). Tapia waived his right to a jury trial on the four aggravating factors. After the verdict was read and the jury was discharged, the court scheduled the sentencing hearing and referred Tapia to the probation department.

IV.    *Probation revocation*

During trial, the court granted the People's request to consolidate the jury trial on the current offenses with a bench trial to determine whether Tapia violated the terms of his probation in two separate cases (case Nos. RIF2204216 & RIF2004007) based on the evidence admitted at the jury trial. The record on appeal does not contain the notices of probation violations in those cases, but it does include the complaints, plea agreements, sentencing transcripts, and sentencing memoranda from those cases, as well as the sentencing minute order in case No. RIF2204216.

In 2021, Tapia pled guilty to a felony violation of section 273.5(a) (case No. RIF20040007) The trial court sentenced him to 120 days in custody, of which 119 days

could be served on work release, plus 20 hours of community service and three years on probation.

In 2023, Tapia pled guilty to a felony violation of section 273.5(f)(1) (case No. RIF2204216). The trial court sentenced him to a suspended six-year prison term and three years on probation.

After the trial in the present case, the trial court revoked probation in both probation violation cases. Sentencing for the underlying convictions and the two probation violation cases was consolidated.

V.     *Sentencing*

The probation department recommended that Tapia be sentenced to the upper term of five years on the corporal injury count (count 2) on the basis of numerous aggravating factors, only four of which had been charged. The probation department concluded that there were no mitigating factors.

The probation report includes a summary of Tapia's "record of prior criminal conduct, including convictions as an adult and sustained petitions in juvenile delinquency proceedings." (Rule 4.411.5(3).) The report states that Tapia had a misdemeanor conviction in 2012 for corporal injury on an intimate partner (§ 273.5(a)), for which he was sentenced to 28 days in jail and 36 months on probation (case No. INF1201513). The report also listed Tapia's felony convictions in 2021 and 2023 for violating section 273.5(a) and 273.5(f)(1), for each of which Tapia was sentenced to three years on

5

probation (case Nos. RIF2004007 & RIF2204216). According to the report, Tapia had no juvenile criminal adjudications and no strike convictions.

Tapia's probation for the 2012 misdemeanor conviction was revoked twice, and in both instances he admitted that he violated probation by failing to perform the ordered community service hours. His probation for the 2021 conviction was revoked in 2022, and he admitted that he violated probation by committing a new crime and by failing to comply with a 52-week domestic violence program and the ordered community service hours. In December 2023, it was alleged that Tapia violated his probation for both the 2021 conviction and the 2023 conviction by committing a new crime.

Both the prosecution and the defense filed sentencing briefs. The prosecution argued that Tapia should be sentenced to an aggregate term of 13 years in state prison, including upper terms on both the corporal injury count and the great bodily injury enhancement. The prosecution argued that the sentence was warranted by the numerosity and increasing seriousness of Tapia's convictions for domestic violence. According to the prosecution, the 2021 and 2023 felony convictions involved Doe, and the 2012 misdemeanor conviction involved a different victim.

Defense counsel argued that the trial court should impose an aggregate sentence of seven years four months, with low terms for the corporal injury count and the great bodily injury enhancement. With respect to the alleged aggravating factors, Tapia argued that each of the four factors alleged in the information constituted elements of the charged offenses, enhancements, and probation violations.

At sentencing, the People provided the court with three certified prior conviction packets from the 2012, 2021, and 2023 convictions identified in the probation report, along with the certified California Law Enforcement Telecommunications System (CLETS) rap sheet for Tapia. (Cal. Code Regs., tit. 15, § 3000.) The record on appeal does not include those documents. The prosecution stated that the evidence had been shown to defense counsel. Defense counsel did not object to introduction of the evidence. The court stated that it received and reviewed the evidence for the purpose of determining whether the aggravating factors were proven true for the corporal injury count and the great bodily injury enhancement.

Doe and members of Tapia's family made statements on his behalf. The court gave both the prosecutor and defense counsel an opportunity to argue. The prosecution submitted on its sentencing brief. Defense counsel argued in favor of a lower sentence on the basis of the arguments in his sentencing brief and the family members' statements to the court. With respect to the false imprisonment offense (count 3), counsel argued that the court should impose a concurrent sentence rather than a consecutive sentence because the evidence supporting that conviction was "very limited." Counsel also noted that the probation report's description of the evidence of false imprisonment was not accurate: "The probation report refers to Count 3 something about him forcing the victim in the shower after this incident. There was no evidence of that."

After hearing argument, the court stated that it had reviewed "everything," including the briefs submitted by both counsel and letters submitted on Tapia's behalf.

7

The sentencing minute order states: "Court has read and considered Sentencing Briefs, letters, Probation Report."

Before imposing sentence, the court stated that it was struck by two things that it considered "serious." First, the court stated that Tapia had "done this" three times previously, was first convicted of a misdemeanor and then twice convicted of felonies, and was sentenced to probation each time. Second, the court stated: "He was given a 5-year suspended sentence. 5 years hanging over his head, and yet he still did it again. This time he did it in a very violent manner. He inflicted great bodily injury on the victim. That can't be ignored. I have to address that. [¶] The victim says he's learning. Well, I don't know that he's learning. He should have learned when he had five years of prison over his head. He should have been walking on eggshells but, no, he didn't. I have no reason to believe he wouldn't go out and do it again, and each one appears to be more violent." The court stated that even though it dismissed the torture count, the underlying incident was "very violent" and that the "real violence" needed to "be addressed."

The court imposed an aggregate sentence of 11 years four months in state prison, consisting of the upper term of five years for the corporal injury count, the midterm of two years for the great bodily injury enhancement, and consecutives sentences of 16 months and one year for the probation violation cases (case Nos. RIF2204216 & RIF2004007). In imposing the upper term on the corporal injury count, the court found true the following three aggravating factors: (1) Tapia was on probation at the time of the

8

offense; (2) Tapia's prior performance on probation was unsatisfactory; and (3) Tapia's prior convictions were numerous and increasing in severity. The court stated that the same aggravating factors provided "ample, ample evidence to select the high term" for the great bodily injury enhancement, but the court chose to impose the midterm instead because it believed that "the aggravated sentence is sufficient for punishment on this offense." The court also explained that it was imposing a consecutive sentence for case No. RIF2204216 because "it is a separate event, separate occasion."

DISCUSSION

Tapia contends that the trial court erred by imposing the upper term on the corporal injury count based on facts not proven beyond a reasonable doubt. We disagree.

Subdivision (b)(2) of section 1170 (section 1170(b)(2)) "provides that the trial court may impose a sentence exceeding the middle term only when circumstances in aggravation of the crime justify imposition of an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt' at a jury or court trial.'" (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078 (*Wiley*).) Subdivision (b)(3) of section 1170 (section 1170(b)(3)) provides an exception to that requirement by allowing the court to "'consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.'" (*Wiley*, at p. 1079.) But the only facts that a court can find under section 1170(b)(3) are the "bare fact of a prior conviction and its elements." (*Wiley*, at p. 1086) Other aggravating circumstances

9

related to the prior convictions, such as numerosity or increasing severity, are subject to the requirements of section 1170(b)(2). (*Wiley*, at pp. 1082-1085.) "We review an aggravating factor finding for substantial evidence." (*People v. Mendez-Torres* (2025) 113 Cal.App.5th 1007, 1020.)

Tapia contends that the findings that his prior convictions were numerous and increasingly serious and that he performed unsatisfactorily on probation "exceeded the prosecution's proof." The argument is based on the faulty premise that the only evidence that the court considered was the certified packets from his prior convictions and the certified CLETS rap sheet. The record demonstrates otherwise.

At the sentencing hearing, the court stated that it "reviewed everything," and the sentencing minute order states that the court had read and considered the probation report. Defense counsel referred to the probation report when arguing for a lower sentence. Given the court's oral statement that it "reviewed everything" and the reference to the probation report in both the minute order and defense counsel's argument, the record shows that the trial court did not rely exclusively on the certified records of conviction or the CLETS rap sheet in finding the aggravating factors true.

The probation report included a summary of Tapia's criminal history, including the sentences for his prior convictions and his admitted probation violations. The trial court was permitted to consider the contents of the probation report in determining whether Tapia's crimes were numerous and increasingly serious and whether Tapia was on probation when the current offenses were committed. (§ 1170, subd. (b)(4); *Wiley*,

10

*supra*, 17 Cal.5th at p. 1069.) Tapia does not argue to the contrary. Because the record demonstrates that the court did not rely exclusively on the certified conviction records or the CLETS rap sheet in adjudicating the aggravating factors, Tapia's challenge to the court's findings on that basis fails.

Moreover, the probation report contains substantial evidence supporting the court's findings that Tapia's prior convictions were numerous and of increasing seriousness and that he performed unsatisfactorily while on probation. First, Tapia suffered three domestic violence convictions from 2012 through 2023, and "three convictions are 'numerous' within the meaning of [the applicable rule]." (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098.) The probation report also contains substantial evidence that those convictions were of increasing seriousness, because each successive conviction exposed Tapia to a potentially longer sentence. (*Wiley*, *supra*, 17 Cal.5th at p. 1082 ["the determination that a defendant's prior convictions are of increasing seriousness may be made by 'reference to the range of punishment provided by statute for each offense'"].) For the 2012 misdemeanor conviction under section 273.5(a), Tapia faced a sentence of no more than one year in jail. For the felony conviction under the same statute in 2021, Tapia faced a possible sentence of two, three, or four years in prison. And for the 2023 felony conviction under section 273.5(f)(1), Tapia faced a possible sentence of two, four, or five years in state prison. (§ 273.5(a), (f)(1).)

11

Tapia's arguments to the contrary are not supported by the record. He argues: (1) "[t]wo prior convictions have been found to not be numerous"; (2) "[i]t is an improper dual use of facts to use a prior conviction that is used as a strike under the three strikes law to also impose the upper term"; and (3) "it was improper to consider a juvenile adjudication for purposes of imposing the upper term." Tapia suffered three prior convictions (not two), and he did not suffer any prior strike convictions or juvenile adjudications.

Second, the probation report also contains substantial evidence that Tapia performed unsatisfactorily while on probation. He was sentenced to probation for each of his three prior convictions, and he admitted multiple probation violations, including repeated failure to comply with the community service requirement, failure to participate in a 52-week domestic violence program, and commission of a new crime. Those admitted violations constitute substantial evidence that Tapia performed unsatisfactorily while on probation. (*Wiley*, *supra*, 17 Cal.5th at p. 1083.) Moreover, the court also found that Tapia's conduct in February 2024 violated the terms of probation imposed for the 2021 and 2023 convictions, and the court revoked Tapia's probation because of those violations.

Tapia also argues that the trial court relied on the probation violations both in selecting the upper term for the corporal injury count and in choosing to impose consecutive sentences in the probation violation cases. He contends that "is a prohibited dual use of facts" under rule 4.420(h), which provides: "A fact that is an element of the

crime on which punishment is being imposed may not be used to impose a particular term."

The argument lacks merit for two reasons. First, Tapia's unsatisfactory performance on probation is not an element of the corporal injury offense, so the trial court's reliance on that unsatisfactory performance in selecting the upper term for the corporal injury offense does not violate rule 4.420(h). Second, the court did not rely on Tapia's unsatisfactory performance on probation in choosing to impose consecutive sentences in the probation violation cases. Rather, the court imposed consecutive sentences in those cases because the conduct underlying the convictions in those cases took place on separate occasions. In sum, there was no dual use of Tapia's unsatisfactory performance on probation. The court used it only as one of several grounds for selecting the upper term for the corporal injury count.

For all of these reasons, Tapia has not shown that the trial court erred by imposing the upper term on count 2.[2]

---

[2] In his reply brief, Tapia challenges the sufficiency of the evidence supporting the court's finding that he was on probation when the crimes were committed, and he argues that the court erred by imposing the upper term on the basis of the great bodily injury aggravating factor. The arguments are forfeited because they were made for the first time in a reply brief without any showing of good cause for failing to make them earlier. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) The arguments also fail on the merits. First, the trial court revoked Tapia's probation for the 2021 and 2023 convictions on the basis of the criminal conduct underlying the current offenses. That constitutes sufficient evidence that Tapia was on probation when he committed the current offenses. Second, the court did not base any of its sentencing choices on the great bodily injury aggravating factor, and the court did not even find that factor true.

13

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

CODRINGTON
Acting P. J.

FIELDS
J.